May it please the Court, my name is Jeffrey Leavitt, and I represent St. Joseph's Hospital in Orange, California. In this case, the Secretary's regulations provide that a facility may obtain a higher reimbursement rate if it can demonstrate that a substantial proportion of treatments involve atypical services. Now, in the all-critical footnote 14 to the Board's opinion, the Board held that St. Joseph's failed to meet the substantial proportion test. But the fundamental problem with the Board's decision is that it does not state the criteria which it used nor the facts that it found in support of that decision, of that conclusion. And as such, it cannot pass muster under the Administrative Procedures Act. In addition, the Board The Board did make reference to evidence that was not submitted with the application for the exception in that paragraph. Did you attempt to submit additional evidence? And were you not barred by that point by the 180-day rule? Well, Your Honor, I'm not sure what evidence the Board is referring to. I believe they're referring to the fact perhaps that the patients dialyze more frequently, that pediatric patients dialyze more frequently than do adult patients. And I'm not quite can't, I'm not sure as to what, had we submitted any evidence along those lines, how it would have impacted the Board's conclusion. Because we don't know the criteria we used, the Board used in arriving at its decision. And so essentially, had we submitted evidence on that issue, it's not clear how it would in any manner impact the Board's conclusion. Can I ask you about a different conclusion of the Board? The Board said that since the provider failed to submit the requisite nursing personnel cost documentation under a regulation that cites, it couldn't qualify for an exception. And that was the same The regulations do say that it's necessary to provide that information. Why isn't that an F? Well, first of all, Your Honor, we mounted a procedural challenge on that issue. And the procedural challenge was essentially because CMS in its decision, initial decision, dropped that issue, we did not believe it was properly before the Board. Is there a regulation that says that because the statute directs the Board to look over the entire record in reaching its conclusion? Well, that's correct. But the admonishment of the statute has to be informed by the requirements of the APA, which requires that the party contesting an agency decision have some idea as to what their target is. Otherwise, they're literally required to just guess at any possible grounds an administrative agency could theoretically use and attack all of those grounds before the administrative agency proceeding. Why wasn't the fiscal intermediary's letter, which was based on that one issue, enough to put the provider on notice here? Precisely because the CMS essentially repudiated it. They repudiated it by, in their letter, omitting that as a basis for their denial. Now, their letter to you, because their letter back to the intermediary does discuss this lack of sufficient data. Well, actually, the intermediary's letter is simply the nature of a recommendation. The recommendation goes to CMS, who makes the final decision. The recommendation letter contained that language pertaining to the conflicting patient counts. The CMS decision, which is the decision that was appealed to the PRRB, the Board, omitted that as a basis for its finding. And as such, it was not briefed before the PRRB, the Board, because having omitted it as a basis for a denial, we viewed the issue essentially as having been mooted. Now, the Board says this is unwaivable, this regulatory requirement. Do you disagree with that? Well, with respect to the unwaivable aspect of the regulatory requirement, I think there the Board was referring to the issue of the conflicting patient counts, if I'm not mistaken. It's the same regulation, right? If you don't have that information, then you're non-titled to an exception. Right. There are essentially three grounds. There was initially the ground of the substantial proportion test. Then there was this ground, essentially, of the conflicting patient counts. Now, with respect to the conflicting patient counts, the Board noted that the patient counts are an integral part of the atypicality analysis, and therefore, we cannot waive that as a requirement. But the problem here is that we don't know what the Board's atypicality analysis was, so we cannot discern what was the impact of submitting different patient counts on that atypicality analysis. Beyond that, I would note that each of the four different patient counts cited by the Board in its decision, regardless of which one of St. Joseph's Hospital had a substantially higher percentage of pediatric patients than the national average. And I would also note, with respect to the issue of the personnel cost documentation issue, which John had referred to, that beyond the procedural issue, I would note that we have, in our briefs, stated chapter and verse, essentially, where in the exception request was all of the personnel cost documentation required, the government has never addressed that issue in either their briefs at the district court or at their briefs at the court of appeals. And as such, our position on the substantive aspect of that issue is essentially unrebutted. If there are no further questions, I would like to reserve the remaining portion of my time for rebuttal. Yes. Why don't you do that? Thank you, Your Honor. Good morning, Your Honor. This is Russell Chittenden on behalf of the appellee in this case, the Secretary of HHS. I would submit that this is a very straightforward case. The issue is whether the appellant in this case, St. Joseph's Hospital, carried its burden at the administrative level, it did not, and it did not for two reasons, either of which was sufficient for this exception to be denied. The first, of course, is the issue of the patient mix. The second issue, which I think is critical, and which alone would justify the denial, is the issue of failure to submit the required documentation. In other words, just because a hospital could show it had an atypical patient mix that required these more intense services, which I would not concede they've done, but even if they had, they must also show by documentation that this caused, in this case, in the case of this facility, their treatments to be higher. Simply saying we have an atypical patient mix sets up the argument, but does not conclude the argument that you may have higher costs. That's why this documentation is so critical. And in this case, there's almost a presumption in the argument of St. Joseph's that because it had this atypical patient mix in its view, which I don't agree with, therefore they must have had higher treatment costs, and I think they we know what the cost per each employee is per treatment, which is required by 42 CFR 14.184B2. The appellant addresses that at page 21 of its brief and conclusion here about what each employee was paid, what they have. Can you just divide the, and they're on page 231 and 232, can you just divide the total costs for the treatment by the number of patients? I'm not sure that you could, Your Honor. I think that would require an assumption that may or may not be justified here. In any event, I would submit that the regulation requires that the package, if you will, the The regulation, you're saying the regulation requires the hospital to do the division. Of course, yes. In other words, you come, when you're asking for an exception, you say, here's one of their criteria, here's the answer to that, here's my methodology. You don't say You can look at it and divide it and figure out for a number of patients that wasn't dead how much it cost. I'm not sure that that could be done, and it should have been done, and one would have expected that it be done at I know, by the way, I'm terrible at math, but I could do the math. I'm not so sure. Again, I mean, the problem with this case is there are a number of variables. Like what? Well, number of treatments, number of patients They give you number of treatments, they give you number of patients, what else? Time over which those treatments took place, time over which those patients were at issue, which has been explored here, and others. What is it? I mean, we've got what looks to be a balance sheet, almost, which says, you know, we spent this much on registered nursing. We've got an assertion, which is very conclusory, that says, well, as far as this other requirement about how much time they spent in the dialysis unit, all of our employees spent 100% of their time there. And from these... From the way I read it, they were only giving you the salary information for the people who performed dialysis. It wasn't for everybody. It was for the particular nurses who did the dialysis treatments. That, on page, I believe it's 133 of the excerpts of record, we've got what appears to be a total amount for registered nurse expenditures, if I understand it correctly. Now, whether that was something that only pertains to dialysis treatments, only pertains to pediatric dialysis treatments, I'm not so sure. In any event, Your Honor, I think that CMS, in this case, is entitled to a conclusion that is then supported by documentation, rather than an assumption that is accompanied by documentation. And I think that's what we have here. It wasn't spelled out adequately, is what you're saying. The connection wasn't spelled out. It wasn't. There's too much left to argument. That's why I would... Which code section of regulation says the level of detail that has to be spelled out to the intermediary in order to make your case out? There are three code sections. The one that talks most about submitting documentation is 42 CFR 413.184. And it talks about documentations in two areas, one regarding the patient mix at subsection B, and one regarding this documentation regarding costs of nursing personnel at subsection B2. And the first requirement there is the amount each employee was paid. And I still don't know that number. I mean, I don't think that number is even contained to this date in the brief that addresses that subject submitted by St. Joseph's at page 21. It simply says, look at our documentation. At this time, certainly, by now, it's become enough of an issue, I would submit, that that should have been done if for no other body than for this Court. So, again, I think the presentation was inadequate even assuming that the appellate in this case could get over the hurdle of having rendered these atypically intense dialysis services. And that also brings up a point as to waiver of arguments and so forth. The requirements here are at the threshold, primary patient requirements for an approvable request. These things are not brought up after the fact by tribunals, by CMS, by PRRB or anyone else. They're there from the beginning. And I would submit that St. Joseph's was aware of these requirements. So I think that to treat this as a procedural matter as to whether arguments can be raised is not appropriate. In that regard, the PRRB's decision here is being reviewed de novo by the Court. To the extent that the PRRB grounds its decision on certain conclusions, those, I would submit, are always before the Court. It's impossible for us to look at the review of a decision de novo and not say that aspects of that decision are before this Court in reviewing that decision de novo. So... Are you in the middle of a thought? No. You know, sometimes these regulations are so complex that you can't, no reasonable person or entity could work their way through. And I'm just curious if there are other circumstances where other hospitals have been able to obtain an increase, have been able to establish the requirements necessary to obtain an increase. Your Honor, I don't have that information. I would assume that there are. Okay. That's just a question we don't know the answer to. Well, I could find that out. I just ran through my head. If it's something that's routinely done or this is the first time anyone's ever tried it, I'm just trying to get a sense of what we're dealing with. Is this a new world we're facing? Or is this something everyone does all the time? Well, I can say this much based on my experience with cases involving the PRRB. They are granted, you know, the PRRB does rule in favor of providers quite often. And in that sense, I think the Court can have some confidence in this particular decision. I would also note that the PRRB, its particular expertise is in these issues. It's called the Provider Reimbursement Review Board. And it gets into these issues of documentation of cost increases and so forth. And in this case, I think what St. Joseph appears to have done is to look at criteria that might justify an exception. To find the criteria of these 11 categories that it exceeds and to base its exception request on that theory. However, too much, I would argue, of what St. Joseph's presentation relies on is an assumption that if we exceed this criteria, which gives us the right, opens the door to make an argument that because of that, we've exceeded the normal treatment costs. If we simply get to that point, the rest can be deemed to have been shown. And I don't think that's the way this works. And I don't think that is what was done. I don't think that presentation was made. When I look at the board decision and subtracting where it's quoting what the CMS said, assuming that that's not the board's decision, it seems like it really is relying only on the point that 17.4% of the provider's patients being under 24 years of age is not substantial without really any explanation of why it's concluded that. On the substantive issue, whether it failed to meet its burden of proving a rendered atypical ESRD services, how would you characterize the board's analysis? I think it's always a difficult question whether something is substantial. And I think that Congress and, in fact, the regulations intentionally left it to the discretion of CMS and the PRRB as to what might qualify, depending on a variety of circumstances. However, and I believe that St. Joseph's has attempted to argue that there was a de facto test of 50% that was applied either by the PRRB or by CMS before them in deciding this. I do think that when we consider that for each and every treatment that this facility would submit, whether it involves a pediatric patient or not, this additional rate would apply, it only makes sense that a substantial portion of the patients for whom those treatments are being submitted would necessitate this higher level of treatment. Now, is 17% enough? I don't know. If we look at the percentage under 18, I believe it drops to 12%, which is what I would consider to be pediatric under the age of 18. Is that enough to justify this higher rate across the board for treatments that this facility submits? It would seem to me that it's not. I thought the standard, and correct me if I'm wrong, was a substantial proportion as compared to the national average, not a substantial proportion of the patients at the hospital. Yes, but I believe that you have to look at, for example, the national average for a particular category might be 5% and you have 6%. Well, how does that affect the mix in its totality? Probably not much. And that's the kind of argument I think we're faced with here. You do have to look at, I mean, if you did have more than one category that substantially exceeded the national average, and those two categories combined added up to 40% or 50%, then you're talking about a significant, economically significant increase in the cost that this facility has incurred that might be passed along. However, I don't think that's the situation here, and I think that's part of what the documentation requirement gets at as well. Not only must you show that your proportion of treatments is such that it might be expected to increase your overall costs, you have to show that that really happened here. And I would submit in this case, Your Honor, that really St. Joseph didn't show either. But doesn't the board's decision actually come down to its, because it raises the question of whether or not it's a substantial proportion, but only says what CMS said. Then it raises the documentation, but it says, but even if the provider had submitted the information required by the documentation provision, the provider was not entitled to an exception, as the provider's data regarding its number of patients was conflicting. So doesn't this whole decision come down to the reason that the patient numbers within the documentation was conflicting, and that was the reason for the denial? I do not believe so, Your Honor. I think the conflicting patient numbers went only to the threshold criteria of whether you had the sufficient patient mix to get to the next requirement, which is the documentation regarding the nursing costs and other costs that needed to be demonstrated. And I think the PRRB was quite clear in holding that that requirement, that second requirement, that proof to show you incurred these costs was not met, and that even if it had been met, then you get to this argument that the threshold, the patient mix showing atypically intense services was not demonstrated either. All right. Well, thank you very much, Counsel. Thank you. Thank you, Your Honors. I appreciate the time. I would just simply say that with respect to the issue of the cost per employees, I find it just ironic that the government is here now asserting that, you know, we did not submit sufficient documentation of our cost per employee, but at the end of the day, we have four or five briefs, not a single sentence on that issue. And with respect to the government counsel's position that 11% in his view is not substantial, he may or may not be right. But the issue is not at the end of the day what he thinks or what I think. It's really what the government is saying, whether they used 11%, 17%, the fact that the percentage of pediatric patients at St. Joseph's was 12 times higher than the national average. We don't know what they used. We don't know the factors they relied on. And, you know, with respect to the conflicting patient counts, I've already addressed that, but I would just note that the reason the board denied the patient counts was because they said it was an integral part of the atypicality analysis. But we don't know what their atypicality analysis was. And at the end of the day, whether or not there is in the records substantial evidence to support this decision, it really doesn't matter. Because at the end of the day, all that's important is what's in the board's decision. The fact is maybe somewhere in those 5,000 page of documents you may find a reason, adequate reason to support the board's decision. We disagree with that, but it's possible. But at the end of the day, that just doesn't matter. The board's decision has to stand on its own. It's not that different from any other administrative law case. This is not a complex issue involving Medicare. This is just a straightforward issue of administrative law. The board's decision just has to stand on its own two feet. And I've respectfully submitted in this case it just does not do that. Thank you. Thank you very much, counsel. St. Joseph Hospital v. Lovett is submitted, and the court will adjourn for this session.
judges: Wardlaw, Ikuta, Beistline